212 N.J. Super. 187 (1986)
514 A.2d 545
NORMA HARTMAN AND DONALD HARTMAN, HER HUSBAND, PLAINTIFFS,
v.
GLENN CARLTON YAWGER, D.D.S., DEFENDANT.
Superior Court of New Jersey, Law Division Somerset County.
Decided May 7, 1986.
*188 Dennis M. Donnelly for plaintiffs (Blume, Vazquez, Goldfaden, Berkowitz & Oliveras, attorneys).
David Lustbader for defendant (Philip M. Lustbader and David Lustbader, attorneys).
ARNOLD, J.S.C.
In this dental malpractice action, plaintiff seeks through the videotaped deposition of her treating dentist, to inform the jury that a periodontist concluded that she suffered from periodontal disease for a number of years. Defendant's objection to this evidence raises the issue of whether, pursuant to Evid.R. 56, an expert may testify in direct examination about the conclusion of another expert on the ultimate issue in the case. No reported decision clearly delineates whether such hearsay evidence is admissible under Evid.R. 56 or its federal counterpart Fed.R.Evid. 703.
*189 Plaintiff, Norma Hartman, lived in Somerset County from 1970 through 1983. During that time she was treated by defendant, Glenn C. Yawger, a licensed practicing dentist in the State of New Jersey. The parties agree that during that 13-year period plaintiff received examinations and treatment by defendant several times each year. During 1982 and 1983, defendant did extensive bridgework on top of plaintiff's gums. She was treated and examined by him at least three times in 1983. Thereafter, she moved to Florida and approximately nine months after her last examination by defendant, plaintiff went to a dentist, Dr. Kimbrough, in Clearwater, Florida. When Dr. Kimbrough examined plaintiff, he found that she suffered from periodontal disease and referred plaintiff to a periodontist, Dr. Melker. Upon examination, Dr. Melker concluded that plaintiff was suffering from periodontal disease and, because of its extent, concluded that she had periodontal disease for many years. In order to arrest the disease, Dr. Melker performed four separate surgeries on plaintiff. In addition, Dr. Kimbrough later replaced all of plaintiff's bridgework.
The gravamen of plaintiff's complaint is that plaintiff suffered from periodontal disease for many years while being treated by defendant, that defendant negligently failed to diagnose the disease and that as a result plaintiff had to undergo surgery and the removal and replacement of her bridgework. Plaintiff alleges that defendant's failure to diagnose and treat the periodontal disease also caused her to sustain periodontal damage and bone loss which she would not have otherwise sustained. Defendant denies that plaintiff suffered from periodontal disease while she was his patient.
Dr. Melker is not going to be a witness at trial, and no videotaped deposition has been taken of him. However, Dr. Kimbrough's videotaped deposition has been taken and in that deposition Dr. Melker's opinion is disclosed. Specifically, Dr. Kimbrough was asked the following question by plaintiff's counsel during the course of the videotaped deposition:

*190 Q. Now Dr. Kimbrough, I have marked as P-5 for identification, a letter from Dr. Daniel Melker, addressed to me, and dated January 21, 1986, and I will ask you to assume that in that letter Dr. Melker, the periodontist who you referred Mrs. Hartman to, gave an opinion based on your x-rays of January 4, 1984, that the periodontal problem which the two of you found would have existed for approximately ten years prior to January of 1984.
I will ask you, from your discussions with Dr. Melker, and from your own independent judgment and opinion you reached based on this patient, is that a fair approximation of the period of time the problem would have existed in her mouth?
Defense counsel objected to the question when asked, and now objects, arguing that it should be excised from the videotape because it contains inadmissible hearsay evidence that Dr. Melker concluded that plaintiff suffered from periodontal disease during the years she was under defendant's care. Plaintiff contends that this information is admissible under Evid.R. 56(2) as a fact or datum on which Dr. Kimbrough relied in forming his opinion. Later in the videotaped deposition, Dr. Kimbrough testified without reference to Dr. Melker's opinion that in his opinion plaintiff had periodontal disease for at least three years before he examined her.
Before the amendment of Evid.R. 56 in 1982, expert testimony based on the expert opinions of others was inadmissible. Rules of Evidence, Comment 7 to Evid.R. 56(2) (Anno. 1986). Any disclosure of the opinion of the out-of-court expert was prohibited. Stanley Co. of America v. Hercules Powder Co., 16 N.J. 295, 309 (1954) (a hypothetical question which includes any opinion of another expert is improper).
Evid.R. 56(2), as amended in July 1982, provides that
[t]he facts or data in a particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.
This language was borrowed from Fed.R.Evid. 703. The purpose of that rule is set forth in the advisory committee's note which reads in relevant part as follows:
[f]acts or data upon which expert opinions are based may, under the rule, be derived from ... presentation of data to the expert outside of court and other *191 than by his own perception. In this respect the rule is designed to broaden the basis for expert opinions beyond that current in many jurisdictions and to bring the judicial practice into line with the practice of the experts themselves when not in court. Thus a physician in his own practice bases his diagnosis on information from numerous sources and of considerable variety, including statements by patients and relatives, reports and opinions from nurses, technicians and other doctors, hospital records and x-rays. Most of them are admissible in evidence, but only with the expenditure of substantial time in producing and examining various authenticating witnesses. The physician makes life-and-death decisions in reliance upon them. His validation, expertly performed and subject to cross-examination, ought to suffice for judicial purposes. [Emphasis supplied]
Thus, it is clear that Evid.R. 56 authorizes the admission of the opinion of an expert based upon the opinion of an out-of-court expert. Rules of Evidence, Comment 7 to Evid.R. 56(2) (Anno. 1986). The opinion of such an out-of-court expert is a predicate opinion because it forms the basis for the testifying expert's opinion. The issue in this case is whether on direct examination, the proponent of expert testimony may bring out the opinion of an out-of-court expert on the ultimate issue in the case. The difference between a predicate opinion and an opinion on the ultimate issue in the case is determinative of the question.
Evid.R. 57 states that the facts and data underlying an expert's opinion need not be brought out on direct examination, unless the judge so requires. The opinion of another expert underlying the testifying expert's opinion is a "fact," Tyree, "The Opinion Rule," 10 Rutgers L.Rev. 601, 611 (1956), and falls within the purview of Evid.R. 57. But Evid.R. 57 says nothing about whether the proponent may bring out such fact or datum on direct examination, although there is an implication found in the history of Evid.R. 57 which seems to imply that he may do so. Evid.R. 57 was modeled after Fed.R.Evid. 705 and the advisory committee's note to the federal rule states that "[w]hile the Rule allows counsel to make disclosure of the underlying facts or data as a preliminary to the giving of an expert opinion, if he chooses, the instances in which he is required to do so are reduced." Emphasis supplied. However, *192 even assuming that an out-of-court expert's opinion which underlies a testifying expert's opinion may be elicited on direct examination, the question still remains as to whether an opinion not underlying, or forming the predicate of, the testifying expert's opinion may be elicited.
Even the few federal cases dealing with the admissibility of such underlying, or predicate opinions, have reached conflicting results. In American Universal Ins. Co. v. Falzone, 644 F.2d 65 (1 Cir.1981), plaintiff insurance companies sought a declaratory judgment that they were not liable for fire loss because the fire was the result of arson. Whether the fire was arson was the ultimate issue in the case. The insurance companies introduced the expert testimony of a state fire marshall who testified that the fire had not started in the basement and was arson. His opinion was based, in part, on reports from members of his inspection team that the furnace or heating system was not the cause of the fire. During the course of his direct examination, he testified about this predicate information contained in the reports of his inspection team. The district court refused to strike the fire marshall's testimony, and the court of appeals held that the refusal was fully justified by Fed.R.Evid. 703. Similarly, the district court in United States v. Phillips, 515 F. Supp. 758 (E.D.Ky. 1981), held that a psychiatrist could testify about the report of a consulting psychiatrist because it was a factor in forming his own opinion that defendant was sane.
In Bryan v. John Bean Division of FMC Corp., 566 F.2d 541 (5 Cir.1978), however, the fifth circuit took a much more restrictive position regarding the admissibility of an out-of-court expert's opinion which was a predicate for the testifying expert's opinion. In that products-liability action, plaintiff alleged that a cast-iron tool known as a clevis was defective, broke into pieces under pressure and struck him, causing loss of an eye and other injuries. Whether the clevis was defective was the ultimate issue in the case. Plaintiff's expert testified that the clevis broke because of manufacturing defects including *193 high levels of porosity and impurity and a dangerous crack. The defense expert testified that the clevis as manufactured was sufficiently strong to sustain the stress it would have encountered in normal use in the proper manner. His opinion was predicated on the level of porosity and impurities present in the clevis established by two metallurgists, neither of whom testified at trial. Both metallurgists had rendered written reports of their findings, each concluding with his opinion on the reason the clevis failed. On cross-examination of the defense expert, plaintiff's counsel elicited the opinions expressed by the two metallurgists in their reports. Despite the fact that such cross-examination would appear to be proper pursuant to the last sentence of Fed.Evid.R. 705, the federal counterpart of Evid.R. 57, the court of appeals found that such evidence was improperly admitted. Although the court relied on a finding that there were no "extraneous indicia of reliability" attached to the reports, the opinion also stated that "to admit the hearsay opinion of an expert, not subject to cross-examination, goes against the natural reticence of courts to permit expert opinion unless the expert has been qualified before the jury to render an opinion." Id., 566 F.2d at 546.
The few federal cases dealing with the admissibility of underlying, or predicate opinions, do not provide much guidance when, as in the present case, the out-of-court expert's opinion deals with the ultimate issue in the case. However, a few California decisions provide limited guidance in view of the fact that Evid.R. 56(2) was derived from Fed.Evid.R. 703 which in turn was derived from Cal.Evid.Code § 801(b), Rothstein, Rules of Evidence for the United States Courts and Magistrates (2 ed. 1985) at 280.10. That section of the California Code was enacted in 1965. Thereafter, two cases were decided dealing with the admissibility of the opinion of the out-of-court expert on the ultimate issue in the case. Whitfield v. Roth, 10 Cal.3d 874, 519 P.2d 588, 112 Cal. Rptr. 540 (Sup.Ct. 1974) was a medical malpractice action which involved the ultimate issue of whether an x-ray showed a tumor. Defendant-radiologist *194 called two doctors to give their opinions. Each testified that the x-rays were normal. Each then testified that he called in other doctors to look at the x-rays and that these other doctors said that the x-rays did not contain any abnormalities. The trial judge admitted such testimony, but the California Supreme Court determined that its admission was error. That court held that the opinions of the out-of-court doctors were not admissible because they were not used by either testifying doctor "in the course of treatment or diagnosis of plaintiff." The California Supreme Court noted that the doctors could testify as to the basis of their opinions but they could not act as "a channel ... [to] place the opinion of innumerable out-of-court doctors before the jury." Id., 10 Cal.3d at 895, 519 P.2d at 603, 112 Cal. Rptr. at 555. Similarly, in Jamison v. Lindsay, 108 Cal. App.3d 223, 166 Cal. Rptr. 443 (1980), the court held that it was not error to exclude the opinion of an out-of-court expert to show the basis of a testifying expert's opinion when the testifying expert did not use the opinion of the out-of-court expert during treatment or diagnosis of plaintiff. But cf. Kelley v. Bailey, 189 Cal. App.2d 728, 737-738, 11 Cal. Rptr. 448, 454-455 (1961).
These California cases prohibiting the introduction of opinions of out-of-court experts on the ultimate issue are highly relevant in this case. Even if Evid.R. 56(2) permits an expert to testify on direct examination about the opinion of another expert on an intermediate issue upon which his opinion is predicated, in this case plaintiff is attempting to introduce hearsay evidence about another expert's opinion on the ultimate issue. While language in Dietzeman v. Peterson, 196 N.J. Super. 96, 101 (Law Div. 1984) suggests that Evid.R. 56(2) permits an expert to use hearsay to confirm an opinion which had been reached by independent means, the specific example cited in Peterson from State v. Alexander, 7 N.J. 585 (1951), cert. den. 343 U.S. 908, 72 S.Ct. 638, 96 L.Ed.2d 1326 (1952), on which the Peterson court relied, related to the opinion of another expert on an intermediate issue on which the first expert's opinion was predicated. Here, however, the evidence proffered is not such *195 evidence regarding an opinion on an intermediate factual issue, but a concurrence of opinions by Drs. Melker and Kimbrough on the ultimate issue in the case. To permit the jury to learn that a periodontist, Dr. Melker, reached the same opinion as a general dentist, Dr. Kimbrough, seems to this court to constitute a complete end run around the hearsay rule which is not warranted by the history of Evid.R. 56(2), its federal or California counterparts nor the relevant case law.
Accordingly, the above recited matter will be excised from the videotape.