605 A.2d 1092

PETER CATERINICCHIO AND ANNE CATERINICCHIO, HIS WIFE, PLAINTIFFS–APPELLANTS, v. PITTSBURGH CORNING CORP., PITTSBURGH CORNING CORP., AS SUCCESSORIN-INTEREST TO UNARCO INDUSTRIES, INC., A.P. GREEN REFRACTORIES CO., SUBSIDARY OF U.S. GYPSUM, METROPOLITAN REFRACTORIES, DIVISION OF A.P. GREEN REF-

RACTORIES CO., M.W. KELLOGG CONSTRUCTORS, QUIGLEY CO., SUBSIDIARY OF PFIZER, INC., MADSEN & HOWELL, INC., JOHN DOE $1 TO $15 (FIFTEEN UNIDENTIFIED MANUFACTURERS AND SUPPLIERS OF ASBESTOS FIBER AND ASBESTOS COVERED EQUIPMENT TO PLAINTIFF'S PLACE OF EMPLOYMENT), DEFENDANTS.

PETER CATERINICCHIO AND ANNE CATERINICCHIO, HIS WIFE, PLAINTIFFS-APPELLANTS, v. CAREY CANADA, INC., A/K/A CAREY CANADIAN MINES, PHILIP CAREY, PHILIP CAREY MFG. CO., CELOTEX, CELOTEX, AS SUCCESSOR-IN-INTEREST TO PHILIP CAREY AND PHILIP CAREY MFG. CO., EAGLE-PICHER INDUSTRIES, GAF, RUBEROID, GAF, AS SUCCESSOR-IN-INTEREST TO RUBEROID, ARMSTRONG WORLD INDUSTRIES, ARMSTRONG CONTRACTING & SUPPLY, ROBERT A. KEASBEY CO., OWENS-ILLINOIS, INC., OWENS-CORNING FIBERGLASS, WOOLSULATE, COMBUSTION ENGINEERING, BABCOCK & WILCOX, C.F. BRAUN, FOSTER WHEELER, ACE ASBESTOS, EMPIRE ACE, GARLOCK, JOHN DOE $1 TO $50 (FIFTY UNIDENTIFIED MANUFACTURERS, SUPPLIERS AND INSTALLERS OF ASBESTOS, ASBESTOS FIBER AND ASBESTOS COVERED EQUIPMENT TO PLAINTIFF'S PLACES OF EMPLOYMENT), DEFENDANTS, AND H.W. PORTER, A/K/A PORTER-HAYDEN CO., INC., DEFENDANT-RESPONDENT.

Argued September 11, 1991—Decided May 6, 1992.

*Ronald B. Grayzel* argued the cause for appellants (*Levinson, Axelrod, Wheaton & Grayzel,* attorneys).

*Andrew T. Berry* argued the cause for respondent (*McCarter & English* and *Ozzard, Wharton, Rizzolo, Klein, Mauro, Savo & Hogan,* attorneys; *Nathan A. Schachtman,* of counsel; *Mr. Schachtman* and *Roseanne C. Kemmet,* on the briefs).

*George W. Conk* submitted a brief on behalf of *amicus curiae* ATLA–NJ (*Tulipan, Goldman & Conk,* attorneys; *Mr. Conk* and *Judith Kimerling,* on the brief).

The opinion of the Court was delivered by

POLLOCK, J.

In this appeal, as in *Landrigan v. Celotex Corp.*, 127 *N.J.* 404, 605 *A.*2d 1079 (1992), also decided today, we consider the applicable rules for the admission of expert testimony in toxic-tort litigation. The specific issue is whether the trial court was correct in striking as an inadmissible "net opinion" the testimony of a physician who was plaintiff's sole expert on causation of colon cancer. The Appellate Division affirmed that ruling. In a second ruling, the trial court directed a verdict for plaintiff on his claim that pleural thickening and pleural plaques constituted compensable injuries. The Appellate Division reversed that ruling. We granted plaintiff's petition for certification, 126 *N.J.* 326, 598 *A.*2d 885 (1991), and now reverse that part of the judgment of the Appellate Division pertaining to plaintiff's colon-cancer claim, affirm that part concerning his claim for pleural thickening and pleural plaques, and remand the matter to the Law Division.

–I–

For many years, plaintiff, Peter Caterinicchio, worked with asbestos products in the course of his employment as an insulator, pipefitter, and line mechanic. His most significant exposure to asbestos occurred during a sixteen-year period in which he worked as an insulator at the Exxon Bayway Refinery in Linden, New Jersey. In 1985, plaintiff was diagnosed as having colon cancer, and underwent surgery involving the removal of a substantial portion of his colon. Subsequently, he was diagnosed as also suffering from asbestosis and pleural fibrosis. In 1987, plaintiff filed this action, asserting that exposure to asbestos had caused his diseases. Anne Caterinicchio, his wife, sued *per quod;* as used in this opinion, the term "plaintiff" refers to Mr. Caterinicchio only. Before trial, plaintiff settled with all defendants except H.W. Porter (also known as Porter–Hayden Co., Inc.) (Porter) and Owens–Corning Fiber-

glass Corporation (Owens–Corning). Owens–Corning settled during trial.

At the trial in 1989, plaintiff relied on two experts, Dr. Albert Miller, a physician who is board certified in both internal and pulmonary medicine, and Dr. William J. Nicholson, an industrial hygienist and epidemiologist. Relying on various epidemiological studies, including a landmark study by Dr. Irving Selikoff, see Irving Selikoff et al., *Mortality Experience of Insulation Workers in the United States and Canada,* 330 *Annals N.Y. Acad. Sci.* 91 (1979), *cited in Landrigan, supra,* 127 *N.J.* at 417, 605 *A.*2d at 1086, Dr. Nicholson concluded that the insulators were subject to a risk factor for colon cancer of at least 1.59, as compared with the 1.55 ratio that Dr. Sokolowski estimated in trial court testimony in *Landrigan.* See 127 *N.J.* at 417, 605 *A.*2d at 1086. Although he found a causal relationship between asbestos exposure and colon cancer, Dr. Nicholson did not address the question whether asbestos was responsible for plaintiff's cancer. He also quantified the range of asbestos exposure of insulators as a class, and said that plaintiff's exposure put him in the high end of the range.

Through Dr. Miller's testimony, plaintiff intended to establish the specific connection between asbestos exposure and colon cancer in his case. Relying on epidemiological studies, plaintiff's employment history, and the absence of a history of colon cancer in Caterinicchio's relatives, Dr. Miller concluded that plaintiff's colon cancer was causally related to his asbestos exposure. Subsequently, when plaintiff moved to reopen his case to present more conclusive causation testimony by Dr. Miller, defendant Porter stipulated that "if called Dr. Miller would testify that this colon cancer was caused by asbestos through [sic] a reasonable degree of medical certainty."

–II–

At the close of plaintiff's case, defendants moved to dismiss the colon-cancer claim because of plaintiff's failure to

establish the requisite causal connection between the cancer and his exposure to asbestos. In granting that motion, the trial court stated:

Number one, I'm going to assume for the moment that Dr. Miller has testified sufficiently that in his opinion the epidemiological reports that he referred to indicated that colon cancer is caused by asbestos exposure, although he testified both ways that the epidemiological studies showed an increased risk.

I'm going to assume that later Dr. Miller did say that it was his opinion from a reasonable degree of medical certainty that the plaintiff's colon cancer was caused by asbestos exposure.

Based on those assumptions then I must examine to determine whether under Evidence Rule 57 there was a reasonable medical basis for arriving at that conclusion.

Number one, the epidemiological study, which data or figures relative risk ratios were given was the Selikoff study of 17,800 workers, which showed according to the witness a relative risk ratio of 1.6 or 1.8 depending upon the use of the death certificates or the best evidence method.

Although as I pointed out I believe earlier in this case I don't believe there's any New Jersey case directly on point as to whether there has to be a showing of relative risk ratio of two-plus for it to be more likely than none.

There are a number of out-of-state cases including Federal District Court cases making that requirement.

I find that it's necessary to have epidemiological studies that show a relative risk ratio of—in excess of two * * *.

\* \* \* \* \* \* \* \*

The doctor in supporting his opinion as to the causal relationship of the colon cancer of the plaintiff to asbestos said his primary reason was the well-documented and well-thought-out, well-organized and highly reputable study of Dr. Selikoff.

He later in the case gave the further reasoning that because the plaintiff had asbestos-related disease in his lung area or the area of his lung therefore he came to the conclusion that the colon cancer is causally related. This is a mere opinion. I find it was a net opinion. I find that there was no basis given in fact for arriving at that opinion.

For all of these reasons, I'm going to in effect grant the defendant's motion and what that really means is that I am dismissing the claim for the colon cancer as being caused by asbestosis [sic].

In an unreported decision, the Appellate Division found the facts to be

materially identical to those considered by us in *Landrigan v. Celotex Corporation*, 243 *N.J.Super.* 449 [579 *A.*2d 1268] (App.Div.1990), where we concluded that the evidence and the opinions based thereon were inadequate to authorize

an inference of causal relationship between asbestos exposure and the colon cancer which took the life of plaintiff's decedent.

Accordingly, the Appellate Division affirmed the judgment dismissing plaintiff's claim for colon cancer.

In *Landrigan v. Celotex Corp., supra,* 127 *N.J.* at 417–419, 425, 605 *A.*2d at 1086–1087, 1090, we rejected the proposition that epidemiological studies must show a relative risk factor in excess of 2.0 before an expert may draw an inference that a particular person's disease was caused by exposure to a harmful substance. We explained that the trial court must instead consider the bases of, and process by which an expert witness reaches, such a conclusion, without substituting its scientific judgment for that of the expert. Consistent with that holding, we now hold in this case that on remand the trial court should evaluate the testimony of plaintiff's experts under the *Landrigan* standard.

–III–

Plaintiff also asserted a claim for pleural thickening and pleural plaques. The pleura lines the thorax and covers the lungs, allowing the lungs to inflate and deflate during respiration with a minimum of friction. Pleural thickening and pleural plaques are benign changes of the pleura. They are often asymptomatic, but may sometimes impair pulmonary functioning. Richard Doll & Julian Peto, *Effects on Health of Exposure to Asbestos* 2 (1985).

Plaintiff testified that he suffered from shortness of breath during mild exertions such as climbing stairs or walking, and claimed that this condition interfered with his ability to engage in household chores and recreational activities. Dr. Miller conceded that plaintiff's pulmonary function was normal, but stated that his pleural thickening was a permanent disease.

Defendants' expert in pulmonary medicine, Dr. Paul E. Epstein, acknowledged that plaintiff had asbestos-related pleural thickening and plaques. He described the thickening as mini-

mal, explained that plaintiff had not suffered any loss or impairment of lung function, and concluded that plaintiff had no disability or change in lifestyle because of the pleural conditions. Further, Dr. Epstein testified that pleural thickening and pleural plaques do not become cancerous and "don't change the individual's life span." He also concluded that plaintiff "does not have asbestosis," and that plaintiff's pulmonary function was within normal limits as defined by the American Thoracic Society. He stated that he did not consider pleural thickening and plaques to be diseases or injuries "because they don't really change the way the person feels," and because they did not measurably impair plaintiff's pulmonary function. Dr. Epstein concluded that plaintiff's pleural changes were inconsequential and did not adversely affect plaintiff in any way. In sum, plaintiff's and defendants' medical experts disagreed on the critical issue whether plaintiff's pleural thickening and pleural plaques constituted a physical injury.

At the close of all the evidence, plaintiff moved for a directed verdict on the issue of injury, noting that "there's no dispute in this case that the plaintiff has bilateral pleural thickening, pleural plaques with associated calcification and there's no dispute in this case that those findings are permanent." Defendants agreed with this characterization of the evidence, but emphasized their expert's opinion that the pleural condition did not constitute a disease or injury. Notwithstanding the conflicting opinions of the parties' experts, the trial court found "injury as a matter of fact. Undisputed fact." Consequently, the court granted plaintiff's motion, stating:

> I find that there's no dispute as to whether or not the plaintiff has pleural thickening and pleural plaques with calcification that were in the nature of scarring of the lungs.
>
> I therefore find that the jury must return a dollar verdict for the plaintiff because it's undisputed that there was an injury and since the plaintiff has an injury he's entitled to dollar damages.

Although the trial court referred to no legal authority in granting plaintiff's motion, it instructed the jury: "I have found as a matter of law that there's an injury. It's for you to

determine what the injury is, what the nature and extent of it is and what amount of money damages to award in that regard." Thus, the court found as a matter of law that pleural plaques and pleural thickening constituted injuries and left to the jury to determine the extent and nature of the injury, the portion attributable to each of the several defendants, and the amount of damages. The jury returned a verdict for plaintiff in the amount of $100,000, of which 40% was attributable to Porter.

In reversing the trial court's ruling that plaintiff had sustained an injury, the Appellate Division stated:

> We conclude that the trial court erred in removing the question of liability for pleural thickening from the jury. There was ample evidence that plaintiff suffered no compensable pulmonary ill effects from the asbestos exposure. Defendant's expert witness testified by videotape that plaintiff's pulmonary functions were normal and his shortness of breath was unrelated to asbestos exposure. The witness specifically noted the absence of "crackling" in plaintiff's lungs which would signify a pulmonary disorder and that plaintiff's breathing capacity fell within the range classified by the American Thoracic Society as normal. Furthermore, it was shown that plaintiff had been a cigarette smoker for approximately 40 years of his life. Finally, courts have recognized that there are circumstances under which pleural thickening will not be recognized as a compensable injury. [Citations omitted.]

We have not found, nor has plaintiff called to our attention, any reported decisions holding that pleural thickening or pleural plaques constitute a compensable injury as a matter of law. Indeed, there is substantial authority to the contrary. In *Herber v. Johns–Manville Corp.*, 785 *F.*2d 79 (1986), the Court of Appeals for the Third Circuit reviewed a judgment entered on a jury verdict awarding zero damages to an otherwise-healthy plaintiff with asbestos-induced pleural thickening. Applying New Jersey law, the court found there was "ample evidence from which the jury could have concluded that, despite his pleural thickening, Herber was presently healthy and likely to remain so in the foreseeable future. Accordingly, with respect to all elements of damage * * * we conclude that the zero damages assessment should stand." *Id.* at 89 (footnote omitted). The Third Circuit reached a similar result under Pennsylvania law in *Howell v. Celotex Corp.*, 904 *F.*2d 3 (1990).

Plaintiff in that case argued that asbestos-related pleural thickening constituted a compensable injury as a matter of law, entitling plaintiff to a jury charge mandating liability. The court, noting the dispute among medical experts over the appropriate characterization of pleural thickening, concluded otherwise:

[T]he presence of pleural thickening may not, alone, mandate a jury finding of compensable injury for an otherwise healthy plaintiff. We conclude that the substantial medical disagreement over the classification of pleural thickening prevents us from declaring it to be an injury as a matter of law. This question is factual and remains within the province of the trier of fact. [*Id.* at 5.]

We agree. *See also Schweitzer v. Consolidated Rail Corp.*, 758 *F.*2d 936, 942 (3d Cir.) ("subclinical injury resulting from exposure to asbestos is insufficient to constitute the actual loss or damage * * * required to sustain a cause of action under generally applicable principles of tort law"), *cert. denied*, 474 *U.S.* 864, 106 *S.Ct.* 183, 88 *L.Ed.*2d 152 (1985); *In re Hawaii Fed. Asbestos Cases*, 734 *F.Supp.* 1563, 1567 (D.Hawaii 1990) (pleural thickening and pleural plaques not compensable harm in absence of functional impairment); *Wright v. Eagle–Picher Indus.*, 80 *Md.App.* 606, 565 *A.*2d 377, 380–81 (1989) (no error in charging jury that mere existence of pleural plaques not compensable injury); *Giovanetti v. Johns–Manville Corp.*, 372 *Pa.Super.* 431, 539 *A.*2d 871, 875 (1988) (pleural thickening by itself does not mandate jury finding of compensable injury in otherwise-healthy plaintiff).

■ In deciding a motion for directed verdict, the trial court must evaluate all the evidence in the light most favorable to the non-moving party. *See Dolson v. Anastasia*, 55 *N.J.* 2, 5–6, 258 *A.*2d 706 (1969); Sylvia B. Pressler, *Current N.J. Court Rules*, comment on *R.* 4:40–2 (1992). This standard has been characterized as a mechanical one. *Dolson, supra*, 55 *N.J.* at 5, 258 *A.*2d 706. Here, defendants' expert testified that plaintiff's pleural changes constituted neither injury nor disease, that they caused plaintiff no disability or impairment, and that the results of plaintiff's pulmonary function tests were within normal limits. Although the jury may have accepted Dr. Miller's

testimony that the pleural changes were responsible for plaintiff's shortness of breath, it was improper for the trial court to preclude the jury from considering Dr. Epstein's testimony and concluding that plaintiff had not sustained any compensable injury. Accordingly, the Appellate Division was correct in ordering a new trial on this portion of plaintiff's case.

The judgment of the Appellate Division is reversed in part, affirmed in part, and the matter remanded to the Law Division.

*For reversal in part, affirmance in part and remandment*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, O'HERN, POLLOCK, GARIBALDI and STEIN—7.

*Opposed*—None.