258 N.J. Super. 6 (1992)
609 A.2d 47
TERRANCE LOVENGUTH AND JEANETTE LOVENGUTH, HIS WIFE, PLAINTIFFS-RESPONDENTS,
v.
RUTH C. D'ANGELO AND FRANK D'ANGELO, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued May 11, 1992.
Decided June 18, 1992.
*7 Before Judges PETRELLA, R.S. COHEN and KESTIN.
John B. LaVecchia argued the cause for appellants (Connell, Foley & Geiser, attorneys, John B. LaVecchia of counsel and Ernest W. Schoellkopff on the brief).
John B. Collins argued the cause for respondents (Bongiovanni, Collins & Warden, attorneys, John B. Collins and Eleen Gong on the brief).
The opinion of the court was delivered by COHEN, R.S., J.A.D.
This is an auto negligence case. Plaintiff Terrance Lovenguth's auto was struck in the rear by defendant Ruth D'Angelo. Her negligence in causing the accident was conceded. Plaintiff's already bad back became very painful after the accident. Herniated discs were ultimately diagnosed. Surgery was performed, but did not resolve plaintiff's back problems. He has not worked since the accident. A fact finder accepting *8 the testimony of plaintiff, his medical experts, his employment expert, and his economist could conclude that plaintiff was permanently disabled and unable to work. He had a work expectancy of 13.5 years, and an annual wage loss of some $40,000. Defendants' witnesses' testimony tended to show that plaintiff's injury was less severe and less disabling than plaintiff said.
The jury awarded plaintiff some $951,000 and his wife $100,000 on her per quod claim. Plaintiff's award was broken down by the jury in answer to special interrogatories:

 for medical expenses $ 43,507
 for pain and suffering 500,000
 for past lost income 80,886
 for future lost income 326,766

On appeal, defendants do not directly attack the amount of the verdicts as excessive. Instead, they seek a new trial on the basis of five alleged trial errors. Our consideration of defendants' arguments convinces us that there is no justification for a new trial. We therefore affirm.
Defendants' first point is that plaintiff's summation violated the rule of Tenore v. Nu Car Carriers, Inc., 67 N.J. 466, 341 A.2d 613 (1975). Dr. Richard Ruth had testified that plaintiff had a life expectancy of 24 years and a work expectancy of 13.5 years. He said plaintiff's current annual wages were $40,280 and the annual value of his household services was $4650. He explained discounting to present value, and the effect of predictable wage increases and inflationary trends. He recommended they all be ignored in the jury's deliberations because they offset one another, and that a "simple multiplication" of current wages or value of services by a number of years would be accurate. Dr. Ruth did not make the ultimate calculations of wage losses or determine the value of services lost.
In his summation, plaintiff's attorney summarized Dr. Ruth's testimony and multiplied 13.5 (years of work expectancy) by $40,280 (current wages), and came up with a total discounted future wage loss of $543,780. He also apparently wrote that *9 figure on a writing board. He did a similar calculation for the value of lost services performed by plaintiff.
After plaintiff's summation, defendants' counsel objected to the "bottom line" figures and sought a mistrial. The judge denied the application but immediately instructed the jury that attorneys' arguments were not evidence. During the formal charge, the judge pointed out that Dr. Ruth did not testify as to plaintiff's total future income loss and that counsel's figure was just argument. The jury awarded $326,766 for future lost income. It made no separate award for the value of lost services.
Tenore stands for the proposition that evidence "purporting to show an injured plaintiff's aggregate damages" is improper for two reasons. 67 N.J. at 482, 341 A.2d 613. The first is that the evidence assumes fact findings not within the expertise of the economic expert, such as whether, absent the litigated injury, there would have been a change in a plaintiff's earning capacity for other reasons. There is also the uncertainty of the level of wage increases, the uncertainty of economic conditions, and the effects of inflation. Id. at 482-83, 341 A.2d 613. The second impropriety is that "the projection of a gross figure... by an expert tends to exert an undue psychological impact leading to the danger of its uncritical acceptance by the jury in the place of its own function in evaluating the proofs." Id.
Tenore remains the law. See Curtis v. Finneran, 83 N.J. 563, 417 A.2d 15 (1980). It bars "bottom line" evidence of future wage losses in wrongful death cases, like Tenore, and also in non-fatal personal injury cases, because in them, also, future income loss is as uncertain and incapable of precise prediction as in death cases.[1]Genovese v. New Jersey Transit *10 Operations, Inc., 234 N.J. Super. 375, 560 A.2d 1272 (App.Div.), certif. denied, 118 N.J. 195, 196, 570 A.2d 960 (1989).
Tenore does not, however, bar an attorney's argument in summation which includes the bottom line income loss calculation which the expert witness is forbidden to make. The reason is that the jury knows that the attorney is not an economist whose superior knowledge carries some legitimate weight. The judge instructs the jury that the attorneys' arguments are not evidence. Jurors are not surprised to hear hyperbolic claims and contentions in summation they would not expect from sworn witnesses. And lawyers are not surprised when jurors deeply discount their summation arguments. In the present case, the jury gave plaintiff only 60 percent of the lost income claim he made, and plaintiff does not complain about it. Cf. Genovese, supra, 234 N.J. Super. at 379, 560 A.2d 1272 (curative instructions insufficient to overcome strong psychological impact on the jury of the court-invited expert testimony of gross numbers).
Our point is not that a "bottom line" income loss summation is acceptable only if the verdict demonstrates its ineffectiveness, but rather that a lawyer's summation argument does not carry with it the dangers identified in Tenore of false precision and undue impact that result from expert testimony to the same effect. Any such dangers are averted when the trial judge does a proper job of instructing the jury, as was done here more than once, that a lawyer's argument is not to be taken as evidence.
We hasten to add that we deal here only with a future income loss summation argument that completes the arithmetic prohibited to the expert witness. We intend no inroad on the remaining viable portions of Botta v. Brunner, 26 N.J. 82, 138 A.2d *11 713 (1958), or to offer an interpretation of R. 1:7-1(b), regarding closing statements. We also do not intend to comment on Part III(b) of this court's opinion in Gilborges v. Wallace, 153 N.J. Super. 121, 136-38, 379 A.2d 269 (App.Div. 1977), aff'd in part, rev'd in part, 78 N.J. 342, 396 A.2d 338 (1978), to the extent it deals with "bottom line" testimony.
Botta v. Brunner, supra, is not directly relevant. It prohibits an attorney from suggesting in summation a belief as to the pecuniary value or price of pain or suffering per hour, day or week, and from asking that the figure be used as part of a mathematical formula for calculating the damages to be awarded. 26 N.J. at 94, 138 A.2d 713. The Court reasoned that pain and suffering "have no known dimensions, mathematical or financial," id. at 95, 138 A.2d 713, and the purpose of suggesting time-unit valuations "is to instill in the minds of the jurors impressions, figures and amounts not founded or appearing in the evidence." Id. at 99, 138 A.2d 713.[2] Such statements "have no foundation in the evidence. They import into the trial elements of sheer speculation on a matter which by universal understanding is not susceptible of evaluation on any basis." Id. at 100, 138 A.2d 713.
Here, on the other hand, we deal with an attorney's summation on legitimate expert testimony regarding future income loss. Unlike pain and suffering, future income loss is capable of calculation once the jury decides the extent to which lost future earnings are likely and should be compensated. Thus, Botta v. Brunner, does not bar the economist's testimony and should not bar summation which merely adds the arithmetic involved.
Defendants' second argument is that plaintiff's attorney improperly attacked defendant Ruth D'Angelo in cross-examination and summation. The gist of the attack was that *12 she refused to answer interrogatories and to appear for depositions and thus her trial testimony was less worthy of belief.
As a general proposition, defendant is correct that discovery delays and deficiencies which are not demonstrably attributable to the litigant are not a proper subject for an attack on the litigant's credibility as a trial witness. Plaintiff's attorney should therefore not have pursued the course he did. Cf. Henker v. Preybylowski, 216 N.J. Super. 513, 518, 524 A.2d 455 (App.Div. 1987) (new trial on damages ordered where otherwise inflammatory closing statement included baseless accusation that defendant acted in bad faith to defeat plaintiffs' liability and damage claims). The trial judge might well have avoided any possibility of prejudice by an instruction to the jury to disregard any inaccurate and prejudicial implication created by plaintiff's counsel. See Tomeo v. Northern Valley Swim Club, 201 N.J. Super. 416, 421, 493 A.2d 544 (App.Div. 1987).
There are, however, mitigating circumstances. Plaintiff unsuccessfully pursued discovery of defendant Ruth D'Angelo for a long time. His dealings, of course, were with D'Angelo's attorney. Finally, D'Angelo's attorney wrote a letter that admitted liability and suggested that the admission obviated the need for his client's depositions or answers to interrogatories. The clear implicit message was that Mrs. D'Angelo did not dispute liability and had no personal knowledge or other evidence, other than her identified experts, to offer on the subject of plaintiff's damages. Plaintiff's attorney reasonably took that meaning and, as his adversary suggested, terminated his efforts to gain discovery of defendant herself, except as to insurance coverage.
Without prior notice or warning of any kind, defendant introduced into evidence post-accident photographs of the rear of plaintiff's auto, ostensibly showing no damage. Defendant herself was called to the stand on surrebuttal, and described her speed as minimal and the accident impact as slight. Plaintiff's *13 objections to the photographs and to defendant's testimony were overruled.
Plaintiff's attorney was thus blindsided. He was faced with new and unpredicted evidence that reasonably seemed to violate assurances implicit in his adversary's suggestion that defendant's admission of liability made further discovery unnecessary. But, it was the very end of the trial, and plaintiff was denied the opportunity to produce his vehicle damage estimate or police testimony of damage observations. Both, we are told, would have demonstrated that plaintiff's auto had sustained damage.
Our purpose in describing the circumstances of plaintiff's attorney's transgressions is not to excuse them but to evaluate their impact on the outcome of the case. Defendants achieved through surprise an advantage they may well not have deserved. Plaintiff's response was improper, but may well have done no more than right the balance. Weighing of countervailing improprieties is not our favorite decisional mechanism, but we have no sense that any injustice was done. The damage verdicts were not disproportionate to plaintiff's disabilities. Defendant's testimony, whether believed or disbelieved, did not affect the proven fact that plaintiff had herniated discs and unsuccessful surgery. There is no justification for a new trial on this score. Cf. Henker, supra, 216 N.J. Super. at 517-18, 524 A.2d 455 (likelihood that prejudice infected excessive verdict enhanced by inflammatory summation).
As to defendants' other alleged trial errors, we are satisfied that plaintiff's attorney's summation did not violate the "golden rule," which prohibits inviting the jury to award the amount they would want to receive for suffering plaintiff's damages. Cox v. Valley Fair Corp., 83 N.J. 381, 385, 416 A.2d 809 (1980). Also, R. 1:7-1(b) legitimizes the time-unit argument made in summation. The question of whether advanced notice was effectively given is not determinable on this record. If it was not, the omission was harmless. The judge's instructions on *14 the subject are not criticized. The interjected comments of plaintiff about his financial situation were inconsequential.
One last matter. The trial judge made it clear to counsel that he thought it improper to interrupt a summation with objections. There is, of course, the danger that interruption of a dramatic summation will flatten its effect and throw the speaker off stride. Thus, interruption for tactical purposes is improper. There are potential improprieties in summation that are best dealt with on the spot, however, and only immediate objection will serve to trigger necessary remedial action by the judge. For those reasons, we disagree with the trial judge's blanket warning to the attorneys. It is clear, however, that the matter had no effect on the result in this case.
Affirmed.
PETRELLA, P.J.A.D., dissenting.
Although I can agree that several of the errors which occurred in this personal injury case can be disregarded, I have to part company with the majority opinion and dissent essentially based on two issues which in my view were extremely prejudicial, and could not be excused by any dereliction by defense counsel. It may well be that because of what I consider improper arguments by plaintiffs' attorney, the jurors were persuaded for extraneous reasons to assess against defendant a substantial verdict, albeit less than the amount suggested by plaintiffs' attorney, rather than considering solely what plaintiffs were entitled to receive as compensation.
Our function is not only to declare and apply the law, but to exercise a corrective and prophylactic function. The court must ensure that all parties get fair treatment, and this is not accomplished by "tit for tat" justice.
My first essential point of disagreement is with the thesis that Tenore v. Nu Car Carriers, Inc., 67 N.J. 466, 341 A.2d 613 (1975), only prohibits an expert or some witness from testifying about the bottom line damage request. In my view, Tenore's *15 principles are broader. To allow an attorney to do the multiplication and demand specific dollar amounts as unliquidated damages would be error under the philosophy of Tenore. Unless and until the Supreme Court determines that Tenore should be reconsidered or expanded we should not allow an attorney to do what the expert is not permitted to do. To allow an attorney to do the mathematical calculations violates the spirit of Tenore and effectively does an impermissible end run around the rule of law in that case.[1] If this were permissible, attorneys in every case, even where only a life expectancy table is used, would see this as a license for mathematical sum computation analysis to be addressed to jurors in other personal injury cases.
Most jurors are unsophisticated in discerning between what is actually evidence and mere argument by the attorneys. Presented with a logical argument by counsel based on the evidence, it is not difficult to envision the effect of suggesting bottom line figures. While the court instructed the jury that the specific dollar amount stated by counsel in his closing argument was merely argument, it did not specifically instruct the jury to disregard such amount and to arrive at its own figure based upon its review of the evidence. Instructions by the court to the jury to disregard the comments of the attorneys and to rely on the evidence seem impractical in the face of absolute numbers suggested by counsel grounded in some fashion in the evidence presented.
Thus, I would conclude that the comments of plaintiffs' attorney were improper, and constituted harmful error. As the Supreme Court in Tenore noted, a speculative total award figure could have a profound psychological, and prejudicial, impact on the jury. Indeed, in recognizing such impropriety the Tenore Court quoted with approval its earlier opinion in Botta *16 v. Brunner, 26 N.J. 82, 104, 138 A.2d 713 (1958), where it overruled prior decisions allowing counsel to advise the jury of the amount in plaintiffs' ad damnum clause. The reasoning in Botta was that it was doubtful that the figure could be erased from the jury's mind, even with cautionary instructions that the amount represented only plaintiffs' claim; a jury award must be based on reasonable compensation. 26 N.J. at 94-104, 138 A.2d 713. See Tenore, supra 67 N.J. at 483, 341 A.2d 613.[2]See also Dunn v. Praiss, 256 N.J. Super. 180, 195-200, 606 A.2d 862 (App.Div. 1992) (court held that it was error for expert to break down the damages to a simple mathematical formula with the relevant numbers inserted and to place this formula before the jury for mere computation). Until declared otherwise by the Supreme Court, I would read the current version of R. 1:7-1b, which prohibits reference to specific money totals where unliquidated damages and a time-unit argument are involved, as applying to all unliquidated damages, and as a continuing expression that the type of specific sum reference to unliquidated economic damages made here is prohibited. See Curtis v. Finneran, 83 N.J. 563, 571, 417 A.2d 15 (1980) (expert testimony similar to that in Gilborges v. Wallace, 153 N.J. Super. 121, 379 A.2d 269 (App.Div. 1977), aff'd in part, rev'd in part, 78 N.J. 342, 396 A.2d 338 (1978), found proper only in the context of a nonjury trial; such testimony would have been *17 unacceptable in a jury trial). See also Cross v. Robert E. Lamb, Inc., 60 N.J. Super. 53, 79-81, 158 A.2d 359 (App.Div. 1960), certif. denied 32 N.J. 350, 160 A.2d 847 (1960) ("Any excessiveness in the verdict is traceable to the summation alone" which relied on improper bottom line argument for projected wage losses).
In addition, the bottom line damages argument was aggravated by the attack by plaintiffs' attorney upon defendant Ruth D'Angelo based on his assertion of her refusal to answer interrogatories and appear for depositions. Perhaps this was exacerbated by the trial judge's over-broad ruling prohibiting interruptions of summation. The effect of such a prohibition is to encourage counsel to attempt to cross the line with impunity unless and until a subsequent "curative" instruction attempts to unring the bell.
Although it might be inferred that plaintiffs' attorney assented to defendants' attorney's position that there was no need to produce his client for deposition since liability was being admitted (damages were always hotly contested), plaintiffs' attorney hardly pursued this vigorously. Indeed he subsequently obtained an order only requiring a response to certain supplemental interrogatories, without a request to depose defendant.
Since the issue of whether defendant answered interrogatories was not before the jury, the trial judge properly prevented cross-examination on the issue. However, even after the court's ruling, and apparently in the presence of the jury, the following colloquy occurred:
MR. COLLINS: Her credibility is before this jury, judge. This is the first time I've ever heard from this woman despite repeated requests to get testimony out of her.
MR. PIEKARSKY: Objection, your Honor, this goes way beyond the issue.
THE COURT: Mr. Collins, don't discuss that or I'll have to explain to the jury that you also have the right to compel these things.
MR. COLLINS: I did. I wish you would explain that to the jury because I got a court order to do it.
THE COURT: Fine.
*18 While the judge had previously instructed the jury to disregard defendant's acknowledgment that she did not answer interrogatories and did not appear for a deposition, the above quoted colloquy, in which plaintiffs' attorney in effect asserted that defendant had flouted a court order, was not corrected. This remark was prejudicial and inflammatory, and was reinforced by other remarks of plaintiffs' attorney. He capitalized on this comment, when, in summation, he said that defendant never answered interrogatories, never appeared for a deposition, and at the final stage of the trial, testified as to the allegedly minimal impact involved in the automobile accident with plaintiff. Defendants' attorney did object to these comments at the close of summation. However, the court never ruled on that objection. It was lost in the discussion of the objection to the bottom line damage figures, and was never addressed by the court.
Plaintiffs' attorney's comments were inaccurate, or at the very least distorted. Although defendants' attorney may have been dilatory in having defendant respond to interrogatories, defendant eventually did respond and plaintiff never sought to compel her to appear for a deposition. Interjection of such matters into the record had the effect of undermining defendant's credibility and reinforcing plaintiffs' credibility. At very least, the jury was entitled to be told the truth promptly and cautioned that the particular fact was not to be considered in its deliberations. See Tomeo v. Northern Valley Swim Club, 201 N.J. Super. 416, 421, 493 A.2d 544 (App.Div. 1985) (retrial ordered where jury returned no cause verdict after defense counsel falsely implied that defendant was not insured). Just as an attack by an attorney upon a litigant's character or morals, when not an issue in the case, is not an appropriate trial tactic, Henker v. Preybylowski, 216 N.J. Super. 513, 518, 524 A.2d 455 (App.Div. 1987); Paxton v. Misiuk, 54 N.J. Super. 15, 22, 148 A.2d 217 (App.Div. 1959), an attack which erroneously portrays a litigant as one who disregards court orders or procedures is not appropriate.
*19 I conclude that the errors here require a new trial and cannot be mitigated by a remittitur.
Accordingly, I would reverse and remand for a new trial on the issue of damages.
NOTES
[1] The comment in Ruff v. Weintraub, 105 N.J. 233, 238, 519 A.2d 1384(1987), that the Tenore decision was limited to wrongful death cases refers to another aspect of Tenore which did not deal with the "bottom line" problem. As to that other aspect, the Supreme Court in Ruff extended the rule announced in Tenore also to nondeath cases. We are satisfied the Court would take the same course in regard to the "bottom line" problem.
[2] But see amended R. 1:7-1(b).
[1] Indeed, logically it could be argued that the expert might just as well do the calculations since it is simple mathematics.
[2] Justice Pashman in Tenore observed (67 N.J. at 483, 341 A.2d 613):

As to the prejudicial capacity before a jury of gross dollar totals submitted in this manner, compare Botta v. Brunner, 26 N.J. 82, 104 [138 A.2d 713] (1958) where the court said:
We know that as a matter of practice when the ad damnum clause is brought to the attention of the jury, the court admonishes them that it only represents the claim of the plaintiff and that their award must be based on reasonable compensation. But it is extremely doubtful whether such admonitions are sufficient to eliminate the figure from their minds as a conscious or unconscious factor in reaching their verdict. [26 N.J. at 104, 138 A.2d 713].
See also Cross v. Robert E. Lamb, Inc., supra [60 N.J. Super. 53, 79-80, 158 A.2d 359 (App.Div. 1960), certif. denied 32 N.J. 350, 160 A.2d 847 (1960)].