727 A.2d 8

MARY BETH DEHANES, ADMINISTRATRIX AND ADMINISTRA-
TRIX AD PROSEQUENDUM OF THE ESTATE OF JOSEPH F.
DEHANES AND MARY BETH DEHANES, INDIVIDUALLY,
PLAINTIFFS–RESPONDENTS, v. MICHAEL ROTHMAN, M.D.,
DEFENDANT–APPELLANT, AND DR. LORKIN, MADHO
SHARMA, M.D., MEENA SINHA, M.D., RARITAN BAY MEDI-
CAL CENTER, STEPHEN GERMOND, M.D., A. ABELOWITZ,
R.N., M. MURRAY, R.N., R. VORA, R.N., S. SCHMIDT, R.N.,
JOHN DOE, M.D. (A FICTITIOUS NAME), PAUL SOE, M.D., (A
FICTITIOUS NAME), RICHARD HOE, M.D. (A FICTITIOUS
NAME), SUE SOE, R.N. (A FICTITIOUS NAME), MARY ROE,
R.N. (A FICTITIOUS NAME), JAMES BROWN, R.N. (A FICTI-
TIOUS NAME), R.N. (A FICTITIOUS NAME), SALLY BROWN (A
FICTITIOUS NAME), MARY TOE (A FICTITIOUS NAME) AND
PETER POE (A FICTITIOUS NAME), DEFENDANTS.

Argued October 27, 1998—Decided April 19, 1999.

*Joseph P. La Sala*, argued the cause for appellant (*McElroy, Deutsch & Mulvaney*, attorneys; *Mr. La Sala* and *John T. Coyne*, on the briefs).

*Michael B. Zerres*, argued the cause for respondents (*Blume Goldfaden Berkowitz Donnelly Fried & Forte*, attorneys).

*Bruce H. Stern*, argued the cause for *amicus curiae*, Association of Trial Lawyers of America–New Jersey (*Stark & Stark*, attorneys; *Mr. Stern* and *Glen D. Gilmore*, on the brief).

The opinion of the Court was delivered by

O'HERN, J.

This appeal concerns the right of an attorney during summation to suggest to a jury an aggregate sum or "bottom-line" figure to award for a claim of unliquidated economic damages. Specifically, the question is whether it was proper in this wrongful death action for the attorney for a decedent's surviving spouse and children to argue to the jury that the family had suffered a loss of approximately $2 million, of which $1.5 million represented income anticipated to be earned over the remaining years of the interrupted life of their husband and father. We hold that it was not improper for the attorney to sum up for the jury the total of the year-by-year economic losses established by competent expert testimony. This conclusion and other intervening circumstances occasioned us to reconsider the doctrine of *Tenore v. Nu Car Carriers, Inc.*, 67 *N.J.* 466, 341 *A.*2d 613 (1975). That decision sanctioned the use of expert opinion evidence to establish the effect of inflation on future wage losses in a wrongful death action, but prohibited the expert from testifying about the aggregate damages for two reasons. *Id.* at 482, 341 *A.*2d 613. First, the Court found that the expert's tables reflecting aggregate damages assumed findings of fact outside of the expert's scope of expertise. *Ibid.* Second, the Court found that the "[expert's] projection of a gross figure ... tends to exert an undue psychological impact leading to the danger of its uncritical acceptance by the jury in the place of its

own function in evaluating the proofs." *Id.* at 482–83, 341 *A.*2d 613. Following oral argument, we requested that the parties brief the issue of whether *Tenore* should be revisited.

Given the current rules governing the admission into evidence of expert testimony, the increased role of jurors in marshaling evidence prior to deliberations, *see R.* 1:8–8(b) (allowing jurors to take notes during trial with judge's discretion), and the greater sophistication of current jurors, we are satisfied that it is appropriate to permit properly qualified experts to testify to the aggregate sums of their calculations. Courts should preface that testimony with cautionary instructions. A court should tell the jury that it is about to hear expert opinion testimony concerning the economic losses claimed in the case and that any aggregate figures offered by the expert are necessarily based on the reliability of the assumptions that the expert may have made as to future economic trends. Subject to a better formulation by our Model Civil Jury Charge Committee, the following reflects a possible jury instruction:

Members of the jury:

In this phase of the case you are about to hear expert opinion testimony on certain of the economic claims made. You will be the ultimate judges of the reliability of the witness's projections of future economic losses. Any net figures offered by the expert are necessarily based on the reliability of each of the assumptions that the expert has made concerning the future trends that the expert regards as probable. In evaluating the reliability of the projections, you will be aided by the cross-examination of the attorneys and by any evidence presented by the opposing parties. At this stage of the case, you should keep an open mind regarding the reliability of these figures and not give uncritical acceptance to any aggregate sums that you will hear. I repeat, it will be your responsibility and your responsibility alone to determine at the close of the case the amount of economic losses suffered by the claimant.

## I

For purposes of this appeal, we generally accept the version of the case set forth in defendant's brief. Plaintiff's late husband, Joseph F. DeHanes, was treated in 1992 by defendant, Dr. Michael Rothman, in the emergency room of the Raritan Bay Medical Center. The jury found that Dr. Rothman failed to

diagnose a potentially fatal heart condition that was caused by a tear in the inside lining of the aorta, the main artery to the heart. While DeHanes was in the emergency room, the tear caused the lining of DeHanes' aorta to rupture and bleed into the area around the heart. The physician's failure to diagnose and treat the heart condition resulted in DeHanes' death. Plaintiff's expert medical witness testified that had DeHanes been properly diagnosed and treated, he had at least an eighty–percent chance of surviving the tear. The jury later found this chance to have been seventy percent.

At the time of his death, DeHanes was an experienced, thirty-eight-year-old machine operator at Westinghouse Corporation earning more than $55,000 per year. Assuming that he were to retire at age sixty-five, his remaining work expectancy was twenty-seven years. He had a wife and two children, ages eleven and six. His wife brought a survival action for his pain and suffering and a wrongful death action on behalf of herself and the children.

In support of the lost wage claim, plaintiff called an expert witness in labor economics. The witness projected the wages lost during DeHanes' anticipated work expectancy. Although the expert prepared trial exhibits documenting his annual calculations, in keeping with *Tenore*, the expert did not offer a bottom-line or aggregate figure representing plaintiff's total economic loss, and his exhibits were not entered into evidence. He simply provided the jury with a basis for estimating such damages if, after considering all other pertinent proofs, the jury deemed such an award appropriate. In explaining the calculations that should be used for determining DeHanes' anticipated salary though the age of sixty-five, the witness suggested methodologies for calculating the value of fringe benefits, deducting likely income taxes and personal consumption amounts, and reducing the future net losses to reflect the discount to current value. The witness also calculated the value of the family's lost household services, such as maintenance, repairs and household chores. Defense counsel

cross-examined the expert, but the expert's calculations were not otherwise disputed by an expert on defendant's behalf.

Before summations, plaintiff's counsel informed the court that he intended to present to the jury an aggregate sum representing the lost wage claim based on the testimony of plaintiff's expert. The trial court cautioned counsel against making such an argument. Counsel expressed his belief that such a summation would be proper under a recent Appellate Division decision, *Lovenguth v. D'Angelo*, 258 *N.J.Super.* 6, 609 *A.*2d 47 (App.Div.1992), *appeal dismissed*, 133 *N.J.* 417, 627 *A.*2d 1128 (1993). In closing, plaintiff's counsel stated in part:

> And you heard [the expert] testify. *Again, no one produced an economist to say what he was saying was not true. When you weigh the evidence his testimony is undisputed.* He gave you a formula how to figure out into the future taking into account inflation and present value of the dollar. The dollar is worth more now than it would be in the future.... He gave you figures about how much the lost earnings ... would be to the family from 1992 to now and from 1992 to age sixty-five, not even past that, just to age sixty-five. *The total amount of all that income, lost benefits, lost earnings is two million forty-two thousand two hundred forty-six dollars.* That's how much earnings, lost benefits after taxes this family has lost. For his loss, again that's undisputed.
>
> [Emphasis added.]

The trial court instructed the jury in part:

> Like the openings the closings are not evidence.... So that to the extent that they make a statement as to what the evidence is or shows, to the extent that that's inconsistent with what you believe the evidence to have shown or the inferences that you choose to draw, you can disregard those statements because they are not evidence.

The jury awarded plaintiff $75,000 as compensation for De-Hanes' survival claim for pain and suffering; $450,000 for the family's loss of companionship, guidance and counseling; and $1,500,000 for the lost wages DeHanes would have earned. After the verdict, the trial court reduced the verdict to reflect the lost chance of seventy percent.

On appeal, defendant claimed that the attorney's closing violated the rule of *Tenore*. The Appellate Division disagreed. Relying on *Lovenguth,* the Appellate Division held that *Tenore* does not forbid an attorney in summation from stating a bottom-line figure

even though an expert may not mention the same aggregate sum. The *Lovenguth* court had reasoned that when a trial judge has properly instructed the jury that the attorney's argument should not be considered as evidence, an attorney's closing does not present the dangers posed by an expert's testimony. 258 *N.J.Super.* at 10, 609 *A.*2d 47. The Appellate Division thus affirmed counsel's provision of a bottom-line figure in summation. *Id.* at 11, 609 *A.*2d 47. We granted defendant's petition for certification. 153 *N.J.* 213, 708 *A.*2d 64 (1998).

## II

We are satisfied to affirm the judgment below on the basis of the majority opinion in *Lovenguth* that permitted attorneys to provide aggregate figures in closings provided that the trial court instructs the jury that the attorney's closing should not be considered evidence. To allow an attorney to summarize that to which the expert has already testified strikes us as non-prejudicial conduct. Although not available at the time of trial, under our present Rules of Civil Procedure the trial court has discretion to allow jurors to take notes. *R.* 1:8–8(b). It is entirely conceivable that in a case like this, jurors might scribble down the testimony of the witness for each of the years involved and knowing the work expectancy of the claimant, would do their own calculations. Having an attorney summarize these net figures is not an undue intrusion upon the jury's function.

In *Affett v. Milwaukee & Suburban Transport Corp.,* 11 *Wis.*2d 604, 106 *N.W.*2d 274 (1960), the Wisconsin Supreme Court held that it was not error for the plaintiff's attorney to use a black-board to assist a jury in understanding an economic argument provided that the figures on the blackboard were in evidence. It may be a cliché, but it appears intuitively correct to reason that "[w]hat the ear may hear, the eye may see." *Id.* at 280; *see also Johnson v. Heintz,* 61 *Wis.*2d 585, 213 *N.W.*2d 85, 91 (1973) (approving use of economic loss tabulations by attorney in summation so long as tabulations represented recapitulation of evidence

as it had been developed in record). The more difficult question is whether an expert should be permitted to do the same.

## III

### A.

■ Some losses in life cannot be measured in dollars and cents. No expert can properly aid a jury in determining what is just compensation for non-economic damages such as pain and suffering. What measure can there be of the suffering sustained by one who loses an arm or a leg in an accident? The value of pain and suffering is simply beyond the reach of science:

> No market place exists at which such malaise is bought and sold.... It has never been suggested that a standard of value can be found and applied. The varieties and degrees of pain are almost infinite. Individuals differ greatly in susceptibility to pain and in capacity to withstand it. And the impossibility of recognizing or of isolating fixed levels or plateaus of suffering must be conceded.
>
> [*Botta v. Brunner*, 26 *N.J.* 82, 93, 138 *A.*2d 713 (1958).]

"[T]he nature of pain and suffering [thus] remains intrinsically and intractably subjective, and, necessarily, any equation between pain, suffering, impairment and the like and monetary compensation remains elusive and speculative." *Friedman v. C & S Car Service*, 108 *N.J.* 72, 77–78, 527 *A.*2d 871 (1987).

In recognition of the unquantifiable nature of such damages, we have specifically prohibited lawyers from suggesting to juries monetary time-units for evaluating an award of pain and suffering, per hour, day or week.[1] *Botta, supra,* 26 *N.J.* at 100, 138 *A.*2d

---

[1] We subsequently modified the rule of *Botta v. Brunner* to permit attorneys to relate pain and suffering to units of time without suggesting a particular figure to the jury. *See* Sylvia Pressler *Current N.J. Court Rules, R.* 1:7–1(b). *Rule* 1:7–1(b), which was adopted in 1982, states in part:

> Closing statement.... In civil cases any party may suggest to the trier of fact, with respect to any element of damages, that unliquidated damages be calculated on a time-unit basis without reference to a specific sum. In the event such comments are made to a jury, the judge shall instruct the jury that they are argumentative only and do not constitute evidence.

The comment to the *Rule* explains that

713. Other losses, however, are more readily measured in dollars and cents. When a dependent spouse or a child loses the bread-winner in a family, it is a fairly simple matter to compute the loss of wages. "Unlike damages for future pain, suffering, disability, and the like, the anticipated loss of future earnings can be calculated simply, accurately, and objectively." *Friedman, supra,* 108 *N.J.* at 78, 527 *A.*2d 871. Thus, in *Tenore* the Court allowed expert testimony to compute the future economic losses that a widow would suffer from the wrongful death of her husband. The Court concluded that to assist the jury's calculation of future wages, an expert's testimony on the effects of inflation is permissible within the stated limitations that preclude references to aggregate total damages. *Tenore, supra,* 67 *N.J.* at 483–84, 341 *A.*2d 613. However, when *Tenore* was decided nearly twenty-five years ago, those concepts of proof were novel.

Less measurable but nonetheless quantifiable are the economic losses that a parent suffers upon the death of a child. We have thus allowed economic calculations of a parent's losses attributed to the deprivation of companionship and support expected to be received over the lifetime of a child. *Green v. Bittner,* 85 *N.J.* 1, 4, 424 *A.*2d 210 (1980). Acknowledging that pecuniary estimates of loss of companionship may be somewhat beyond the normal understanding of lay people, the Court concluded that "[o]bviously, the use of an expert in [such] cases could be most helpful...." *Id.* at 16–17, 424 *A.*2d 210.

Notwithstanding the broadened attitudes about the need for and use of expert economic evidence, our cases have regularly held that expert opinion evidence purporting to show a plaintiff's

the compromise effected by the rule is to continue the ban on the suggestion of specific monetary amounts either on a lump sum or time-unit basis but to permit counsel to argue to the trier of fact the appropriateness of employing a time-unit calculation technique for fixing any element of unliquidated damages.... The so-called "golden-rule" argument, that is, asking the jury to award an amount it would want for itself in similar circumstances, remains interdicted.

aggregate economic damages is improper, primarily because the projection before the jury of a gross figure or a total resulting damage figure contravenes *Tenore.* *See Green v. General Motors Corp.,* 310 *N.J.Super.* 507, 538–39, 709 *A.*2d 205 (App.Div.), *certif. denied,* 151 *N.J.* 381, 718 *A.*2d 1210 (1998) (stating that expert witness is not allowed to provide formula of future medical expenses even though an attorney can provide "bottom-line" figures); *Dunn v. Praiss,* 256 *N.J.Super.* 180, 199–200, 606 *A.*2d 862 (App.Div.), *certif. denied,* 130 *N.J.* 20, 611 *A.*2d 657 (1992) (subsequent history omitted) and *Genovese v. New Jersey Transit Rail Operations, Inc.,* 234 *N.J.Super.* 375, 379, 560 *A.*2d 1272 (App. Div.), *certif. denied,* 118 *N.J.* 196, 570 *A.*2d 960 (1989) (both holding to same effect). We are no longer certain of the assumption of *Tenore* that jurors will suffer an "undue psychological impact" leading to "uncritical acceptance" if the expert were to state the aggregate damages for lost wages in the wrongful death action.

## B.

Law is an incremental process. We have learned much about the ability of jurors to digest complex evidence. New Jersey jurors do not now, if they ever did, fit the portrait of rustics, in the style of Norman Rockwell, who have come to court to be entertained by lawyers. Jurors today are far more sophisticated. They bring many suppositions into the courtroom sufficient to counter the influence of "undue psychological impact" exerted by the words of an expert witness. A recent survey noted that before they step into a jury box, a large majority of jurors already believes that jury awards inflate their own costs for products (73.2%), medical care (89.3%) and insurance (91.0%). *Jurors: A Biased, Independent Lot,* 154 *N.J.L.J.* 365, 367 (Nov. 2, 1998). Almost half of the potential jurors believe that "expert witnesses only say what they are paid to say." *Ibid.* In short, "[j]urors do not trust civil litigants. Period." *Ibid.* It is hard to imagine that

this genre of jurors will be psychologically lulled into unquestioning acceptance of an expert's testimony.

### C.

In New Jersey, there are but three basic requirements for the admission of expert testimony: .

> (1) the intended testimony must concern a subject matter that is beyond the ken of the average juror; (2) the field testified to must be at a state of the art that such an expert's testimony could be sufficiently reliable; and (3) the witness must have sufficient expertise to offer the intended testimony.
>
> [*State v. Kelly*, 97 *N.J.* 178, 208, 478 A.2d 364 (1984).]

It strikes us that there is nothing so intrinsically unique about economic losses that the subject should cause us to refrain from following the regular rules regarding the introduction of expert testimony. We already permit experts to testify to subjects far more complex than a wage loss claim. *See State v. Harvey*, 151 *N.J.* 117, 199–201, 699 A.2d 596 (1997) (allowing expert testimony regarding DNA evidence in criminal case), *cert. denied*, 499 *U.S.* 931, 111 *S.Ct.* 1336, 113 *L.Ed.*2d 268 (1991); *Rubanick v. Witco Chemical Corp.*, 125 *N.J.* 421, 452, 593 A.2d 733 (1991) (allowing expert opinion evidence on cancer causation even though full scientific consensus not yet reached). We also have already recognized that in a non-jury case, testimony concerning a gross dollar amount should not be prejudicial, particularly when the testimony is subject to cross-examination. *Curtis v. Finneran*, 83 *N.J.* 563, 571, 417 A.2d 15 (1980).

Other jurisdictions have had little difficulty in permitting jurors to hear expert testimony on aggregate economic losses. Chief Judge Becker succinctly stated the reasoning in *Salas by Salas v. Wang*, 846 *F.*2d 897 (3d Cir.1988). Although projection of the aggregate damages and introduction of tables purporting to show the aggregate damages were improper under *Tenore*,

> [s]urely performing present value calculations could have assisted the jury here. Had the aggregate damages been excluded, the jury would simply have been presented with the individual damage items identified by the expert and would have had to make the proper present value calculation by itself (presumably guided by instruction from the court or expert testimony on how to perform the calcula-

tion). But it would have been more efficient and exact to have the expert do the calculation, and in our view, the spirit as well as the letter of the federal rules makes it appropriate that the district court permit the expert to do so.

[*Id.* at 904.]

The Third Circuit found that because *Federal Rule of Evidence* 704 specifically permits an expert to testify to the ultimate issues, to the extent that aggregation is considered to be testimony as to an ultimate issue, it is permissible. *Id.* at 905; *see also In re Merritt Logan, Inc. v. Fleming Cos., Inc.*, 901 *F.*2d 349, 359 (3d Cir.1990) (allowing expert to display a chart that projected the loss of future profits that are adjusted to present value). Our *New Jersey Rule of Evidence* 704, now patterned on the Federal Rule, also permits experts to testify as to the "ultimate issue[s]."

Legitimate concerns arise only when the charts are "an array of figures conveying a delusive impression of exactness in an area where a jury's common sense is less available than usual to protect it." *Herman Schwabe, Inc. v. United Shoe Machry. Corp.*, 297 *F.*2d 906, 912 (2d Cir.), *cert. den.*, 369 *U.S.* 865, 82 *S.Ct.* 1031, 8 *L.Ed.*2d 85, *reh. den.*, 370 *U.S.* 920, 82 *S.Ct.* 1552, 8 *L.Ed.*2d 500 (1962). A claim of lost wages is nowhere near as complex as a claim of lost market share in an anti-trust action as in *Schwabe, supra.* A jury's "common sense" can be trusted to guide it in this relatively uncomplex field. Although such evidence should be deemed inadmissible if its probative value is substantially outweighed by the risk of undue prejudice, confusion or waste of time, *see N.J.R.E.* 403, there is no empirical evidence that altering the rule in *Tenore* will increase the likelihood of such risks. In addition, our discovery rules allow anticipation of an expert's testimony so that an expert's economic projections may be completely rebutted, if not destroyed. Practice guides illustrate how readily the challenges may be mounted:

Economic experts are frequently required to make assumptions in their work. These should be systematically identified.... Each assumption should be explored. For example, ... [w]hat discount rates or inflation rates have been used in computing economic losses? How realistic are the assumptions? ... Closely related to an examination of assumptions is the subject of sensitivity analysis. How sensitive are the expert's conclusions to changes in variables employed by the

expert? It may be that small adjustments in certain data produce large differences in the expert's bottom line. Conversely, if the expert's opinion cannot be shaken or changed regardless of any changes in data or assumptions, this may demonstrate that the expert is inflexible or unreasonable.

> [John G. Koeltl and Robert B. Pringle, *Use of Experts in Commercial Litigation: Discovery and Trial Techniques: The Use of Economic Experts*, 345 PLI/Lit 245, 266–67 (Apr. 1, 1988).]

In short, there is nothing especially complicated about a wage loss claim. To repeat what we said in *Friedman, supra*, "the anticipated loss of future earnings can be calculated simply, accurately, and objectively. Therefore, requiring that an award for these damages be discounted to present value is neither artificial nor unrealistic." 108 *N.J.* at 78, 527 *A.*2d 871.

■■■ A jury's common knowledge and experience is always available to help it assess whether an aggregate sum or "bottom-line" figure presented by counsel or an expert represents fair and just compensation. This jury reduced the attorney's suggested sum for lost wages by approximately twenty percent. What is wrong is for counsel to· say, as this counsel was permitted to say, that such evidence is "undisputed." The only sense in which the figures were undisputed was that for tactical reasons defendant had chosen not to produce its own expert. Courts should forbid counsel from suggesting that figures are undisputed merely because a defendant has not produced an expert.

We have recently reinforced our rules to prevent run-away jury awards on this aspect of the law of personal injury reparations. *Caldwell v. Haynes*, 136 *N.J.* 422, 441–42, 643 *A.*2d 564 (1994) (setting aside jury verdict that constitutes "miscarriage of justice" because evidentiary deficiencies led to exaggerated award for past and future income). We have disapproved of unguided presentations to juries of lost wage claims:

> To rectify the uncertainties that surround the application of the net-income-evidence rule and the confusion that arises from the unstructured current practice, the burden of proving net income in personal-injury and wrongful-death actions should be placed clearly and squarely on the plaintiff. In so doing, we note that such a burden on the plaintiff should not be difficult to sustain because he or she should have easy access to proof of net income. Most of that evidence, such as pay

stubs or tax returns, *is readily at hand and will not involve complicated calcula-tions.*

[*Id.* at 437, 643 *A.*2d 564.]

In addition, we also squarely imposed on trial courts the firm obligation to provide guidance to juries on the relevance of work-life expectancy tables and "the determination of the present or current value of such an award." *Id.* at 441, 643 *A.*2d 564. The Model Civil Jury Charge currently in use, 6.11(D), appears to be more complex than is necessary to convey the concept of a present-value discount. At oral arguments, plaintiff's attorney said that in nearly twenty years of representing clients in personal injury claims, he has never heard a jury charged under 6.11(D). The attorney also noted that trial judges dissuade counsel from requesting the instruction. Perhaps an expert's testimony will simplify the jury's function. The Model Civil Jury Charge Com-mittee should consider revising this charge if it is not used.

Accordingly, we hold that it is permissible to allow properly qualified experts to testify to the aggregate net sums of the economic losses that they have calculated and subject to the same qualifications concerning cautioning the jury against uncritical acceptance, to allow experts to introduce into evidence the exhibits that they have prepared.

The judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice PORITZ and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN, and COLEMAN—7.

*Opposed*—none.