# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3852-18

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

SYLVESTER H. CHEW,

    Defendant-Appellant.

_____

Submitted May 26, 2021 – Decided June 22, 2021

Before Judges Whipple, Rose and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Indictment No. 12-06-1598.

Joseph E. Krakora, Public Defender, attorney for appellant (Andrew R. Burroughs, Designated Counsel, on the briefs).

Jill S. Mayer, Acting Camden County Prosecutor, attorney for respondent (Natalie A. Schmid Drummond, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant appeals from a March 1, 2016 judgment of conviction after a jury found him guilty of numerous counts including second-degree endangering the welfare of a child (creating child pornography), N.J.S.A. 2C:24-4(b)(4); third-degree invasion of privacy, N.J.S.A. 2C:14-9(b); fourth-degree endangering the welfare of a child (possessing child pornography), N.J.S.A. 2C:24-4(b)(5)(b); second-degree attempt to endanger the welfare of a child, N.J.S.A. 2C:24-4(b)(3); and second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a). We affirm.

The following facts are gleaned from the trial record. A.C.[1] was born in December 1998. In 2007, defendant met victim A.C.'s mother on a dating site. A.C. and her mother came to New Jersey from the Philippines in March 2009, and defendant married A.C.'s mother. The three were living together when defendant asked A.C. to put on a bathing suit and do a "photo shoot" during the summer between A.C.'s fifth and sixth grade. In 2010, when she was eleven years old, A.C. finished taking a shower and came downstairs to see defendant watching a video depicting A.C. in her bedroom, with a towel on her head and wearing the same clothes she was then dressed in. A.C. told her mother about the incident. Her mother confirmed what A.C. had seen and saw

---

[1] We use initials for the minor victim pursuant to Rule 1:38-3(c)(9) to protect her identity.

the video of A.C. herself while defendant watched the video. Next to A.C.'s bedroom was a locked room for which neither A.C. nor her mother had a key. A.C. testified there was a T.V. and "a bunch of tapes" in the "little room." A.C. never consented to being photographed in her bathroom or bedroom.

Defendant admitted to the mother he had filmed A.C. in the shower, and that he had taken photos of her in the bathroom. The mother watched defendant take hidden cameras out of the bathroom and A.C.'s bedroom. She also testified that she told defendant that if he didn't remove the cameras, she would call the police. Defendant threatened to kill the mother if she contacted the police.

In 2011, A.C.'s mother sent her to live at a friend's house in a different town because she was scared for A.C. The mother disclosed to her neighbor what had happened, and the neighbor contacted the police. The police obtained a search warrant of defendant's home and found computers, cameras, hard drives, CDs, DVDs, and video cameras in a bedroom that had been converted to an office space and that had two locks on the door.

On June 13, 2012, a grand jury returned a seventy-count indictment that charged defendant with fifteen counts of second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(b)(4); fourteen counts of third-degree

invasion of privacy, N.J.S.A. 2C:14-9(b); thirty-seven counts of fourth-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(b)(5)(b); one count of second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(b)(3); one count of second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a); one count of second-degree hindering apprehension, N.J.S.A. 2C:29-3(b)(3); and one count of third-degree hindering apprehension, N.J.S.A. 2C:29-3(b)(1).

Prior to the start of the trial, both defendant's ability to hear the proceedings as well as his competence to proceed with trial became issues. Defendant moved pursuant to Rule 1:12-3 to disqualify Judge Richard Wells from deciding whether defendant was competent to stand trial because of comments the judge had made questioning defendant's credibility regarding his hearing loss. The judge rejected defendant's motion for recusal.

Judge Wells ordered a competency evaluation. The State's evaluation was completed by Raymond Terranova, Ph.D. Kenneth J. Weiss, M.D., evaluated defendant on his behalf. Terranova, a forensic psychologist, testified that defendant had no history of treatment for a neurocognitive disorder. According to Terranova, defendant suffered from a stroke in 2013, but no treatment plan was indicated, nor altered mental status or memory

A-3852-18

impairment. Terranova found that defendant had some impairment in his ability to hear and receive language or express language outwardly, but based on defendant's performance on the mini-mental state examination, which measures cognitive impairment, Terranova diagnosed defendant with malingering of memory impairment. Terranova opined defendant was competent to stand trial under the Dusky v. United States[2] standard and the requirements of N.J.S.A. 2C:4-4. In sum, Terranova opined that with accommodations for defendant's hearing loss and despite possible cognition issues related to depression, defendant met the statutory competency standard.

Weiss, defendant's expert witness, a board-certified psychiatrist, described defendant's stroke as located in the parahippocampal gyrus part of the brain, which is the "seat of memory." Weiss disagreed with Terranova's assessment of defendant and opined that defendant was not malingering. Weiss agreed with Terranova, however, that defendant was competent to stand trial via prongs (a) through (f) of N.J.S.A. 2C:4-4(b), but that "cognitive functioning would not permit him to aid in a presentation of his defense or to assist counsel to a reasonable degree," under N.J.S.A. 2C:4-4(b)(2)(g).

Judge Wells made precise findings regarding defendant's competency to

_____

[2] 362 U.S. 402 (1960).

stand trial, ultimately agreeing with Terranova that defendant understood the charges against him and the roles of courtroom personnel. The court rejected Weiss's assertion that "defendant lacks the ability to participate in an adequate presentation of his defense." Thus, the matter proceeded to trial.

During the jury trial, A.C. and her mother both testified, in addition to several of the investigating police officers. Over defense counsel's objection, the State also presented numerous nude photos of A.C. that were retrieved from a device in defendant's home which had not been the subject of the indictment against defendant. The court permitted the photos to be shown to the jury as intrinsic evidence of defendant's motive, state of mind, and intent.

While authenticating the State's photo and video evidence obtained from defendant's home, the prosecutor sought to qualify Police Detective Andrew Mayo as an expert witness in computer forensics. The State thereafter withdrew its request to qualify Mayo as an expert, and the judge confirmed that Mayo would not be providing opinion testimony. However, the court interrupted Mayo's testimony to ask trial counsel whether the testimony was too technical or opinion-based. The judge expressed concern that it would be unfair to the State for defense counsel to assert later on that Mayo had technical knowledge and was not qualified. The judge then recited an expert

6

witness charge regarding Mayo's testimony over defendant's objection.

The jury found defendant guilty on June 16, 2015, on fifty-three counts, including thirteen counts of second-degree endangering the welfare of a child (creating child pornography), thirteen counts of third-degree invasion of privacy, twenty-four counts of fourth-degree endangering the welfare of a child (possessing child pornography), two counts of second-degree attempt to endanger the welfare of a child, and one count of second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a).

Following the jury's guilty verdict on fifty-three counts of the indictment, the court sentenced defendant to an aggregate twenty-five-year prison term, which included three consecutive seven-year terms for each of the second-degree convictions and four one-year terms for each of the fourth-degree convictions.[3]  This appeal followed.

---

[3]  On April 13, 2016, the court entered an amended judgment of conviction to correct defendant's sentencing.  On September 21, 2016, we heard defendant's appeal on the Excessive Sentencing Calendar, Rule 2:9-11, and affirmed in an order issued the same day.  State v. Chew, No. A-4093-15 (App. Div. Sept. 21, 2016).

In response to defendant's application for post-conviction relief, on April 5, 2019, the court granted defendant leave to file a notice of appeal as within time with this court, pursuant to State v. Perkins, 449 N.J. Super. 309 (App. Div. 2017).

Defendant raises the following arguments on appeal:

POINT I: AS THE TRIAL JUDGE HAD SHOWN BIAS AGAINST DEFENDANT BY QUESTIONING HIS VERACITY, THE TRIAL COURT ERRED WHEN IT DENIED THE MOTION TO RECUSE ITSELF FROM ADJUDICATING DEFENDANT'S COMPETENCY MOTION.

POINT II: AS THERE WAS IRREFUTABLE EVIDENCE THAT DEFENDANT HAD SUFFERED A STROKE CENTERED IN THE PART OF THE BRAIN THAT CONTROLS SHORT-TERM MEMORY, THE TRIAL COURT ERRED WHEN IT FOUND THAT THE STATE HAD PROVED BY THE PREPONDERANCE OF THE EVIDENCE THAT DEFENDANT WAS COMPETENT TO STAND TRIAL.

POINT III: THE TRIAL COURT ERRED WHEN IT ALLOWED THE STATE TO ADMIT AS INTRINSIC EVIDENCE ADDITIONAL PREJUDICIAL PHOTOGRAPHS AND VIDEOS THAT HAD NOT BEEN IDENTIFIED IN THE COUNTS CHARGED IN THE INDICTMENT.

POINT IV: THE TRIAL [COURT] COMMITTED PREJUDICIAL ERROR WHEN IT QUALIFIED A STATE'S FACT WITNESS AS AN EXPERT HALF-WAY THROUGH THE WITNESS'S TESTIMONY.

POINT V: THE TRIAL COURT'S CUMULATIVE ERRORS DENIED DEFENDANT HIS RIGHT TO A FAIR AND RELIABLE TRIAL. (Not Raised Below).

Addressing defendant's first two points, we note judges' decisions as to whether they should recuse themselves are reviewed under an abuse of

discretion standard. <u>Jadlowski v. Owens-Corning Fiberglas Corp.</u>, 283 N.J. Super. 199, 221 (App. Div. 1995). A judge will not be considered biased solely based on rulings that are unfavorable to the party seeking the judge's recusal. <u>State v. Marshall</u>, 148 N.J. 89, 186-87 (1997). Moreover, we review a trial court's ruling on whether a defendant is competent to stand trial under a standard that is "typically, and properly, highly deferential." <u>State v. Moya</u>, 329 N.J. Super. 499, 506 (2000).

"[A] judge should disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned." <u>State v. Dalal</u>, 221 N.J. 601, 606 (2015) (quoting Canon 3(C)(1) of the Code of Judicial Conduct). The standard for discerning whether a judge should recuse himself is whether a "reasonable, fully informed person [would] have doubts about the judge's impartiality[.]" <u>DeNike v. Cupo</u>, 196 N.J. 502, 517 (2008).

During jury selection, defendant said he was having trouble hearing the proceedings, and that his headphones and hearing aids were not working properly. The court expressed incredulity, suggesting defendant was feigning his hearing loss or exaggerating it. During a sidebar with the prosecutor and defense counsel, the judge questioned defendant's veracity because defendant could hear fine earlier, and the judge explained his reasons. Despite his

9

incredulity, the judge made extensive accommodations to pause the hearing and obtained an interpreter to repeat and "shadow" everything so defendant could hear all of the proceedings. Defense counsel stated: "I believe that you'll honestly decide this motion [for recusal] and if you decide to stay on this case I don't think you'll hold it against this defendant. . . . I don't think you'll treat him any differently than you would treat any other defendant." The record demonstrates the court made diligent attempts to accommodate defendant's hearing impairment, notwithstanding doubt regarding defendant's veracity. We discern no indicia of an unfair proceeding requiring the judge's recusal. See DeNike, 196 N.J. at 517.

In the same vein, defendant must be legally competent in order to stand trial; otherwise, his due process rights have been violated. Pate v. Robinson, 383 U.S. 375, 378 (1966) (citing Bishop v. United States, 350 U.S. 961 (1956)). When the evidence raises doubt as to the defendant's competence, a court must hold a competency hearing, which it did here. State v. M.J.K., 369 N.J. Super. 532, 547 (App. Div. 2004). "In a competency proceeding, the State has the burden to prove by a preponderance of the evidence that the defendant's mental condition at the time of trial does not render him or her incompetent to stand trial." State v. Gorthy, 226 N.J. 516, 530 (2016).

10

In Dusky, 362 U.S. 402, the United States Supreme Court established minimum requirements for determining whether a defendant is competent to stand trial. The test was whether the defendant had "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." Id. at 403; M.J.K., 369 N.J. Super. at 547.

The statutory test for determining mental competence in New Jersey is codified in N.J.S.A. 2C:4-4. M.J.K., 369 N.J. Super. at 547-48. Pursuant to 2C:4-4(b), a person is considered mentally competent to proceed to trial if the proofs establish:

> (1) That the defendant has the mental capacity to appreciate his presence in relation to time, place and things; and
>
> (2) That his elementary mental processes are such that he comprehends:
>
>> (a) That he is in a court of justice charged with a criminal offense;
>>
>> (b) That there is a judge on the bench;
>>
>> (c) That there is a prosecutor present who will try to convict him of a criminal charge;
>>
>> (d) That he has a lawyer who will undertake to defend him against that charge;

(e) That he will be expected to tell to the best of his mental ability the facts surrounding him at the time and place where the alleged violation was committed if he chooses to testify and understands the right not to testify;

(f) That there is or may be a jury present to pass upon evidence adduced as to guilt or innocence of such charge or, that if he should choose to enter into plea negotiations or to plead guilty, that he comprehend the consequences of a guilty plea and that he be able to knowingly, intelligently, and voluntarily waive those rights which are waived upon such entry of a guilty plea; and

(g) That he has the ability to participate in an adequate presentation of his defense.

[N.J.S.A. 2C:4-4(b) (emphasis added).]

The ultimate decision of whether a defendant is competent to stand trial is for the judge to make, not experts. State v. Purnell, 394 N.J. Super. 28, 52 (App. Div. 2007); Moya, 329 N.J. Super. at 506. However, "[e]xpert testimony is needed where the fact[-]finder would not be expected to have sufficient knowledge or experience and would have to speculate without the aid of expert testimony." Torres v. Schripps, Inc., 342 N.J. Super. 419, 430 (App. Div. 2001).

Here, the only matter upon which the two expert witnesses disagreed was whether defendant met criterion 2C:4-4(b)(2)(g): "That [defendant] has

12

the ability to participate in an adequate presentation of his defense." Terranova opined defendant was able to participate in presenting his defense, while Weiss disagreed. As the fact-finder, Judge Wells explained in detail why he rejected Weiss's contention that defendant was unable to participate in the adequate presentation of his defense. We discern no reason to disturb his conclusion.

We now address defendant's evidentiary arguments regarding the admission of intrinsic evidence and the qualification of Mayo as an expert. "A trial court's evidentiary rulings are entitled to deference absent a showing of an abuse of discretion." State v. Nantambu, 221 N.J. 390, 402 (2015) (quoting State v. Harris, 209 N.J. 431, 439 (2012)). "An appellate court applying this standard should not substitute its own judgment for that of the trial court, unless the trial court's ruling is so wide of the mark that a manifest denial of justice resulted." State v. J.A.C., 210 N.J. 281, 295 (2012) (internal quotation marks omitted).

N.J.R.E. 404(b) governs evidence involving other crimes, wrongs, or acts. It provides that:

> Except as otherwise provided by [N.J.R.E.] 608(b), evidence of other crimes, wrongs, or acts is not admissible to prove the disposition of a person in order to show that such person acted in conformity

13

with such disposition. . . . [Such] evidence may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident when such matters are relevant to a material issue in dispute.

"In contrast to other-crimes evidence . . . res gestae evidence relates directly to the crime for which a defendant is being tried, rather than involving a separate crime." State v. L.P., 338 N.J. Super. 227, 235 (App. Div. 2001). Res gestae evidence

> serves to paint a complete picture of the relevant criminal transaction. Thus, evidence of conduct occurring during the same time frame as the crime charged in the indictment will not be excluded if the evidence establishes the context of the criminal event, explains the nature of, or presents the full picture of the crime to the jury.
>
> [Ibid. (quoting State v. Cherry, 289 N.J. Super. 503, 522 (App. Div. 1995)) (internal quotation marks omitted).]

"Instructing the jury on the limited uses of other-crimes evidence is unnecessary when evidence of uncharged conduct is admitted as part of the res gestae of the crime." Ibid. (emphasis omitted).

In State v. Rose, 206 N.J. 157, 182 (2011), our Supreme Court prohibited the use of res gestae as an independent means of admitting evidence. The Court held that whenever other uncharged conduct is sought to

14

be admitted, the trial judge must first determine whether the other crime is subject to N.J.R.E. 404(b) analysis, or whether it is evidence that is intrinsic to the charged crime and thus admitted as an exception to Rule 404(b). Id. at 179.

The Rose Court adopted the test in United States v. Green, 617 F.3d 233, 248-49 (3d Cir. 2010), to determine what can be considered "intrinsic." Id. at 180. "[E]vidence is intrinsic if it 'directly proves' the charged offense" or if the uncharged acts are "performed contemporaneously with the charged crime [and] if they facilitate the commission of the charged crime." Ibid. (quoting Green, 617 F.3d at 248-49).

The Rose Court also held that background evidence is admissible "outside the framework of Rule 404(b)," and when it is admissible for this purpose, the evidence is subject to an N.J.R.E. 403[4] balancing test, as to probative value orprejudice, not Rule 404(b). Id. at 177-78, 181.

> There is no need to regard [N.J.R.E.] 404(b) as containing an exhaustive list of the non-propensity purposes permitted of other crime evidence. . . . [T]here is no reason that our courts cannot allow, under [N.J.R.E.] 404(b), evidence to be admitted for a

---

[4] N.J.R.E. 403 provides that: "[R]elevant evidence may be excluded if its probative value is substantially outweighed by the risk of: (a) Undue prejudice, confusion of issues, or misleading the jury; or (b) Undue delay, waste of time, or needless presentation of cumulative evidence."

. . . "necessary background" or, as otherwise stated, "the need to avoid confusing the jury," non-propensity purpose.

[Id. at 181 (quoting Green, 617 F.3d at 249).]

Here, the trial judge ruled the intrinsic evidence exception applied to the additional photographs the State moved into evidence. These photos and videos were not the subject of the counts of the indictment, but neither were they "other crime evidence." Defendant had contemporaneously collected and created the images and videos, surreptitiously taken of A.C., some of which were alterations (such as enlargements of A.C.'s intimate parts) of evidence that was part of the indictment. The State had provided a list of all of the photographs and video evidence it planned to introduce at trial, and defense counsel was able to review this list. The judge's analysis and decision to admit the evidence comports with the directions announced in Rose, detailed above, and we discern no abuse of discretion in his doing so.

Addressing the court's sua sponte qualification of Mayo as an expert, we note the progression of events was somewhat out of the ordinary. However, it demonstrates the court's instinct was proper, that the jury needed an instruction. Under N.J.R.E. 702, "[i]f scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to

16

determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." To be admissible, the testimony must involve a subject matter that is beyond the ken of the typical juror, the field involved must be a state of art that such an expert's testimony could be sufficiently reliable, and the witness must have sufficient expertise to offer the testimony. DeHanes v. Rothman, 158 N.J. 90, 100 (1999); State v. Kelly, 97 N.J. 178, 208 (1984).

In State v. McLean, 205 N.J. 438, 457-58 (2011), our Supreme Court drew a distinction between testimony of police officers as lay witnesses (N.J.R.E. 701) and expert testimony under N.J.R.E. 702. There, the Court specified that in certain contexts, such as street drug distribution, "the significance of the transactions and the roles played by the participants" can be "beyond the common understanding of jurors [such] that it [meets] the requirements that N.J.R.E. 702 imposes generally on expert testimony." Id. at 451.

Defendant argues that the State had an "unfair litigation advantage" contrary to Rule 3:10-3(a), which provides:

> Whenever the State intends to call an expert witness to testify at trial and that expert witness did not conduct, supervise, or participate in a scientific or other such

A-3852-18

test about which he or she will testify, the State shall serve written notice upon the defendant and counsel of intent to call that witness, along with a proffer of such testimony, all reports pertaining to such testimony, and any underlying tests, at least [twenty] days before the pretrial proceeding begins, or at least [twenty] days before the pretrial conference. If extenuating circumstances exist, the [S]tate may file the notice after this deadline. For purposes of this rule the term "test" shall include any test, demonstration, forensic analysis or other type of expert examination.

Detective Mayo testified regarding the police department's retrieval of photo and video evidence from defendant's computer. Defense counsel objected, arguing that there was no adequate notice and that Mayo was not certified as a forensic computer expert at the time of the trial. Judge Wells determined it was necessary to instruct the jury that Mayo was an expert witness because his extensive training in the forensic computer software was outside the ken of the average juror. Although Mayo's certification had expired when he testified, Mayo had been trained and obtained knowledge beyond the jurors' ordinary ken. The jurors were instructed to view Mayo's expert testimony as opinion, rather than fact, which ultimately could have benefited defendant, not the State. Thus, we reject the assertion of prejudicial error.

Finally, we reject defendant's argument that cumulative error requires a new trial. When an individual error or series of errors does not rise to reversible error, a combination of those errors and "their cumulative effect can cast sufficient doubt on a verdict to require reversal." State v. Jenewicz, 193 N.J. 440, 473 (2008). We find none that rise to such a level.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3852-18